OPINION *Page 2 
{¶ 1} Defendant-Appellant, James Phillip Ray appeals his conviction and sentence by the Richland County Court of Common Pleas for felonious assault with a firearm specification and attempted murder with a firearm specification, following a jury trial. Plaintiff-Appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND THE CASE {¶ 2} Appellant was indicted by the Richland County Grand Jury on the aforementioned charges. The matter went to trial before a jury on August 17, 2006. The following testimony was adduced at trial.
 {¶ 3} In November 2005, Tacuma Fuller met Appellant and struck up a friendship. As the two men spent more time together, Fuller began staying off and on at Appellant's home at 475 Howard Street, Mansfield, Ohio. Appellant's girlfriend, Candice Lane, also lived in Appellant's home. Appellant stated that he did not know Fuller's real name and only knew him as "Bill."
 {¶ 4} On January 12, 2006, Fuller testified that morning he cooked crack cocaine for Appellant, Lane and Lane's friend, Anna Brock. Later in the day, Fuller went to the liquor store to buy a bottle of alcohol. When he returned to Appellant's home, Fuller testified that he saw Appellant speaking with Appellant's neighbor. Fuller believed the neighbor was there to sell Appellant heroin and collect money from him. That same afternoon, Appellant testified he went to the bank to get a $1000 cash advance on his credit card. Appellant placed the money in his wallet and returned home. While at home, he sat in a chair and said that the wallet fell out of his pocket into *Page 3 
the chair. Appellant went to the kitchen and when he returned to his chair, the wallet was on a table and the money was missing from the wallet.
 {¶ 5} Appellant testified that he believed Fuller took the cash from his wallet. At the time, Fuller, Lane, and Brock were in the downstairs bedroom. Appellant went to the bedroom to ask Fuller for some money, but not to confront him on whether Fuller took the cash from his wallet. Fuller testified that Appellant asked him for some money. Fuller refused to give Appellant the money. The two men got into a verbal argument during which Appellant stated Fuller threatened to get his gun and blow their heads off. The verbal argument escalated into a fist fight in the bedroom.
 {¶ 6} Lane separated the two men and Fuller left the bedroom. Appellant stated that he retrieved his .44 magnum from under the mattress and stuck it in his pants. He then left the house, got into his car and drove to his father's house a few blocks away. Appellant testified that he had found out Fuller's real name that day and was afraid because he knew Tacuma Fuller was dangerous.
 {¶ 7} Fuller testified that at that time he grabbed a suitcase and started gathering his belongings from the home. He stated that he tore the living room apart looking for money he had hidden. Lane stated that Fuller said he was looking for his crack. Brock testified that she heard Fuller say that he was looking for his gun.
 {¶ 8} As Fuller was walking down the front steps of 475 Howard Street, Appellant pulled back into the driveway. He got out of his vehicle and confronted Fuller on the steps of the home. Appellant stated that Fuller reached for his gun and so he pulled out his too. Fuller saw the gun and began to run away. Appellant testified that as Fuller ran away, Fuller fired his semiautomatic pistol at Appellant. Appellant stated *Page 4 
that every time Fuller shot at him, Appellant shot at Fuller. Appellant fired three shots. Fuller was struck by all three bullets and collapsed behind 473 Howard Street. Appellant walked up to Fuller and stood over him. Appellant said that he saw Fuller's weapon off to the side. Fuller testified that he attempted to reach into his pockets to give Appellant money but Appellant did not take it. Appellant then walked back to his house, unloaded his gun and set it on a chair in the living room.
 {¶ 9} The police arrived after the shooting in response to three 9-1-1 calls. Each caller testified at trial that they called the police after hearing three gunshots. The police found Fuller with gunshot wounds to his right wrist, left upper arm and right lower back. Fuller identified Appellant to the police as the man who had shot him. Appellant was taken into custody. In his pocket, police officers found six hollow point .44 magnum bullets, three were live rounds and three were spent casings. The police searched the area where the shooting took place and did not locate a gun, shell casings or bullet holes.
 {¶ 10} During trial, Appellant raised the affirmative defense of self-defense. At the conclusion of the trial, the jury found Appellant guilty of both counts charged in the indictment and the accompanying firearm specifications. On August 26, 2006, the trial court sentenced Appellant to five years on the charge of attempted murder, to run consecutive to the three year sentence on the firearm specification for a total sentence of eight years. Appellant was not sentenced on the felonious assault charge because it was an allied offense of similar import. *Page 5 
 {¶ 11} Appellant raises one Assignment of Error:
 {¶ 12} "I. THE JURY'S VERDICT IN FINDING THE DEFENDANT-APPELLANT GUILTY IN COUNT ONE (1) OF FELONIOUS ASSAULT WITH A FIRE ARM SPECIFICATION AND GUILTY IN COUNT TWO (2) OF ATTEMPTED MURDER WITH A FIRE ARM SPECIFICATION WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE THUS THE CONVICTION WAS IN VIOLATION OF ARTICLE I, SECTION 10
OF THE OHIO CONSTITUTION AND THE SIXTH AMENDMENT TO THE UNITED STATE CONSTITUTION."
 I. {¶ 13} In Appellant's sole Assignment of Error, he argues his convictions for felonious assault and attempted murder were against the manifest weight of the evidence. We disagree.
 {¶ 14} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the *Page 6 
evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 15} Specifically, Appellant argues the jury's rejection of his claim of self-defense was against the manifest weight of the evidence. Self-defense is a "confession and avoidance" affirmative defense in which the defendant admits the elements of the crime but seeks to prove some additional element which absolves the defendant of guilt. State v.Hillen, 5th Dist. No. 04 CA 65, 2005-Ohio-6193 citingState v. White (Jan. 14, 1998), Ross App. No. 97 CA 2282. The affirmative defense of self-defense places the burden of proof on a defendant by a preponderance of the evidence. In re Collier (Aug. 30, 2001), Richland App. No. 01 CA 5, citing State v. Caldwell (1992),79 Ohio App.3d 667, 607 N.E.2d 1096. To establish self-defense, the following elements must be shown: (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the defendant must not have violated any duty to retreat or avoid the danger. State v. Robbins (1979),58 Ohio St.2d 74, 388 N.E.2d 755, paragraph two of the syllabus.
 {¶ 16} The incident that started the chain of events on January 12, 2006 was a verbal argument that escalated into a fist fight between Fuller and Appellant. Fuller admitted that he swung the first blow. (T. 349). Appellant stated that during the fight, Fuller said, "Let me get the gun. I'm gonna blow all of your fucking heads off." (T. 591). Lane broke up the fight and Appellant testified that Fuller left the room to get his gun. (T. 592). Appellant retrieved his own gun from under the mattress and left the house. *Page 7 
(T. 592). Appellant then drove to his father's house a few blocks down the street. (T. 592).
 {¶ 17} Appellant's assault of Fuller, however, did not occur until after Appellant returned to the home. Appellant said he returned to the home because he was worried that Lane and Brock were still in the home with Fuller. (T. 593). He did not call the police because he was afraid Fuller would shoot them if the police pulled up. Id. He found out that day that "Bill" was really "Tacuma Fuller" and Appellant was afraid of him because he knew Fuller was dangerous. (T. 590-591).
 {¶ 18} At this point, the jury was presented with conflicting stories as to what occurred. When Appellant pulled into the driveway of 475 Howard Street, Appellant claims Fuller came out of the door and confronted him at the front of the house. (T. 593-594). Appellant stated that he told Fuller to leave his property, but Fuller would not. Appellant saw Fuller tap on his semiautomatic pistol. Appellant showed Fuller the .44 magnum in his waistband and that was when Fuller reached for his gun. Appellant pulled his gun out too and outdrew Fuller. Fuller then started running. (T. 594). Appellant stated that as Fuller ran around the side of the house, Fuller pulled out his gun and fired. (T. 594). Appellant claimed he fired his gun at the same time as Fuller did, and that the first bullet fired by Fuller went past his ear. (T. 594). He stated that Fuller continued to turn around and shoot as he ran away. Every time Fuller fired, Appellant fired at the same time. (T. 595).
 {¶ 19} After the shooting, Appellant states that he saw Fuller lying on the ground bleeding, with his gun off to the side. (T. 595). *Page 8 
 {¶ 20} According to Fuller's testimony, after the fight, Fuller grabbed his suitcase and began looking all over the house for the money he had hidden. (T. 350). When Fuller left the house, Appellant pulled up in the driveway. (T. 346). Appellant got out of the car and began cussing at Fuller. (T. 352). Fuller saw Appellant's gun and began to run away. (T. 352-354). Fuller stated that he did not remember getting shot, he just fell to the ground and could not get up. (T. 346, 353-354). Appellant walked up to Fuller and stood over him. (T. 355). Fuller attempted to get into his pockets to give Appellant money, but Appellant walked away. (T. 355). Fuller testified that at the time of the shooting, he did not have a gun and never shot or pointed a gun at Appellant. (T. 374-375).
 {¶ 21} Witnesses testified at trial that they only heard three shots fired and the shots all sounded the same. (T. 24, 42, 65, 452, 472). The police officers who arrived at the scene testified that they thoroughly searched the area for evidence of another gun, bullet casings, or bullet holes and could not find any such evidence. (T. 97-98, 150, 176-177, 301). The doctor who treated Fuller in the emergency room testified that Fuller's injuries to his right wrist, left upper arm and right back area were consistent with someone who had been shot while running away. (T. 119, 125, 140).
 {¶ 22} Having reviewed the evidence in the record, we are unable to reach the conclusion that the jury's verdict constituted a manifest miscarriage of justice. The evidence establishes that Fuller was unarmed when Appellant confronted Fuller on the steps of the home. Appellant left the home after the fight but chose to return to the home without calling the police and despite claiming he was in fear of Fuller. Appellant set in motion a second phase of events culminating in the shooting. The jury was in the *Page 9 
best position to weigh the credibility of the witnesses. The jury was instructed on self-defense and returned a guilty verdict. We are therefore not inclined to reverse the jury's rejection of the affirmative defense of self-defense.
 {¶ 23} Accordingly, Appellant's sole Assignment of Error is overruled.
 {¶ 24} The judgment of the Richland County Court of Common Pleas is affirmed.
 Delaney, J., Edwards, P.J. and Farmer, J. concur. *Page 10 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1